STATE OF MINNESOTA

IN SUPREME COURT

A24-0450

Court of Appeals                                                          Gaïtas, J.


Serene E. Warren, as beneficiary of the
2011 Arizona NG Trust 102,
2008 Meadow Trust 102, 2011 Lafayette
Trust 102, 2014 London Trust 102, 2014
Lakeview Trust 102, and Grace B.
Evenstad 2011 Irrevocable Grantor Trust,

                    Appellant,

vs.                                                                      Filed: August 5, 2026
                                                                         Office of Appellate Courts
ACOVA, Inc.,

                    Respondent,

Mark B. Evenstad, et al.,

                    Respondents,

Kenneth L. Evenstad,

                    Defendant,

Howard J. Rubin,

                    Respondent.


_____


Steven Wells, Thomas Swigert, Chelsea McLean, Nicholas Tygesson, Ian Blodger,
Dorsey & Whitney LLP, Minneapolis, Minnesota, for appellant.


1

Joseph W. Anthony, Janel M. Dressen, Anthony Ostlund Louwagie Dressen & Boylan P.A., Minneapolis, Minnesota, for respondent ACOVA, Inc.

Christopher W. Madel, Jennifer M. Robbins, Matthew J.M. Pelikan, Madel PA, Minneapolis, Minnesota, for respondents Mark B. Evenstad, et al.

---

S Y L L A B U S

1.      Because the appellant has injury-in-fact standing, whether she is a "shareholder" for the purpose of her shareholder action does not implicate her standing to sue, but instead implicates the legal sufficiency of her claims.

2.      The respondents forfeited any argument that the appellant's complaint failed to state claims upon which relief can be granted.

Reversed and remanded.

O P I N I O N

GAÏTAS, Justice.

This appeal arises from a 2018 lawsuit initiated by appellant Serene Warren related to the sale and reorganization of her family's company. Warren was a beneficial owner of shares in Upsher-Smith Laboratories, Inc. (USL), a closely held pharmaceuticals company. Warren's father and brother—the Evenstad respondents—were also beneficial owners of shares in USL. In 2017, the Evenstad respondents sold part of USL and reorganized the company's remaining assets into a new company called ACOVA, Inc. Warren and the Evenstad respondents remained beneficial owners of the newly formed company. Warren's lawsuit alleged several claims against the Evenstad respondents, ACOVA, and the family trustee, Howard Rubin. One of these claims sought a buyout of

2

her shares in ACOVA under Minnesota Statutes section 302A.751, which authorizes "an action by a shareholder" against a corporation.

Months after the conclusion of a court trial, and while the district court had the case under advisement, the Evenstad respondents raised the argument that Warren lacked "statutory standing" to bring her claims under section 302A.751 because she is a beneficial owner of ACOVA shares and not a shareholder. In support of this argument, the Evenstad respondents cited a then-new, nonprecedential court of appeals decision, *Demskie v. U.S. Bank National Ass'n*, No. A22-0777, 2022 WL 17751473 (Minn. App. Dec. 19, 2022), *aff'd in part, rev'd in part*, 7 N.W.3d 382 (Minn. 2024).

The district court ruled in favor of Warren on some of her claims, including one of her claims for relief under section 302A.751. As to that claim, the district court ordered ACOVA to make redemption payments to Warren's trusts, and it ordered ACOVA to wind down its operations and make final distributions to shareholders. The district court determined that it did not need to address the Evenstad respondents' standing argument based on *Demskie*, concluding that the type of relief it granted did not implicate *Demskie*.

Warren and Rubin appealed to the court of appeals, and the Evenstad respondents and respondent ACOVA cross-appealed, arguing that Warren did not have standing to seek relief under section 302A.751 as a beneficial owner of shares. Relevant here, the court of appeals determined that Warren lacked standing to bring her section 302A.751 claims. The court of appeals further held that, because standing implicates a court's jurisdiction, the issue of whether a plaintiff has standing cannot be waived; therefore,

respondents did not waive their argument that Warren lacked standing by raising the issue after the district court had taken the case under advisement.

We accepted review of two issues: (1) whether a beneficial owner of shares, like Warren, can bring claims under section 302A.751 and (2) whether this first issue—which the parties refer to as Warren's "statutory standing" to bring claims under section 302A.751—is an issue that a party can waive or forfeit by failing to timely raise it. We conclude that whether Warren is a "shareholder" does not implicate her standing to sue under section 302A.751 or the court's jurisdiction over her section 302A.751 claims because Warren has injury-in-fact standing. Rather, Warren's status as a "shareholder" implicates whether she stated claims upon which relief can be granted, which is a challenge that can be waived or forfeited. We further conclude that respondents forfeited their challenge to Warren's status and her ability to bring claims under section 302A.751. Given respondents' forfeiture, we do not reach the question of whether a beneficial owner of shares can initiate an action under section 302A.751. We reverse the decision of the court of appeals and remand to the court of appeals for further proceedings.

## FACTS

This case involves a family, their company, and a bitter dispute that resulted in years of litigation. That litigation culminated in a lengthy court trial followed by a sprawling appeal to the court of appeals. Before this court, there are two relatively narrow issues, and we tailor our presentation of the facts accordingly. We briefly discuss the family and the business at the heart of the dispute, the circumstances that led to the litigation, and the pertinent legal events.

4

***Upsher-Smith Laboratories and the Evenstad family***

Upsher-Smith Laboratories was a closely held Minnesota company that specialized in pharmaceutical products. The company was owned by four members of the Evenstad family: Grace and Kenneth Evenstad, and their children Mark Evenstad and Serene Warren.[1] Mark joined USL in the late 1990s and took over as CEO of the company in 2003. Between 2002 and 2017, Mark and Kenneth were the sole directors of USL.

Warren has never been an officer of USL and has not served on the company's board of directors. Warren was, however, a beneficial owner[2] of USL shares through five trusts: 2011 Arizona Trust 102 (Arizona), 2008 Meadow Trust 102 (Meadow), 2014 Lakeview Trust 102 (Lakeview), 2011 Lafayette Trust (Lafayette), and 2014 London Trust (London). Through these trusts, Warren was a beneficial owner of approximately 25 percent of USL. Howard Rubin served as independent trustee of all five trusts.

In late 2014, Warren's relationship with her family began to deteriorate. The family tensions reached a boiling point in the fall of 2016, when Mark presented Warren with options for her "financial separation" from USL: (1) Warren could buy Mark's

---

[1]  Because the Evenstads share the same last name, this opinion refers to them by their first names throughout. We refer to Serene Warren by her last name.

[2]  The Minnesota Business Corporation Act defines "[b]eneficial owner" as including any person who "directly or indirectly through any written or oral agreement, arrangement, relationship, understanding, or otherwise, has or shares the power to vote, or direct the voting of, the shares or securities or has or shares the power to dispose of, or direct the disposition of, the shares or securities." Minn. Stat. § 302A.011, subd. 41(a).

USL shares; (2) Mark could buy Warren's USL shares; or (3) Mark would "proceed with selling the whole company," and Warren would "get what [she would] get based on the sale price." Warren chose option three—selling the company.

In 2017, USL reached a deal with Sawai, a Japanese pharmaceuticals company, to sell USL's generic drugs business for over $1 billion. Before its sale, USL had a business unit dedicated to generic pharmaceuticals, and it also had "non-generic" assets that included real estate and investments in other companies. Because Sawai was only interested in purchasing the generics part of the business, USL underwent a reorganization to split off the non-generic unit. The non-generic assets were moved to a newly formed company called ACOVA, Inc. Warren was a beneficial owner of ACOVA through the five trusts. Mark became CEO and chairman of the ACOVA board. USL planned to use excess cash from the sale of USL's generics business to buy out Warren from her ownership of that business, while continuing negotiations with Warren to buy out her interests in the non-generic assets that were now part of ACOVA.

### Warren seeks a court-ordered buyout of her shares in ACOVA

In March 2018, Warren filed a complaint in Hennepin County District Court, alleging multiple claims against ACOVA, Mark, Kenneth, and Rubin, including claims brought under Minnesota Statutes section 302A.751, a provision of the Minnesota Business Corporation Act. Section 302A.751 states that a court may grant equitable relief "[i]n an action by a shareholder" when that shareholder establishes that:

> the directors or those in control of the corporation have acted in a manner unfairly prejudicial toward one or more shareholders in their capacities as

6

shareholders or directors of a corporation that is not a publicly held corporation, or as officers or employees of a closely held corporation ….

Minn Stat § 302A.751, subd. 1(b)(3). Section 302A.751, subdivision 2, further states that "[i]n an action under subdivision 1, clause (b)," the court may order a buyout of shares "upon motion of a corporation or a shareholder or beneficial owner of shares of the corporation." Citing section 302A.751, Warren claimed that ACOVA, Mark, and Kenneth had engaged in unlawful and prejudicial conduct toward her as a shareholder in connection with USL's sale to Sawai and the winding-down of ACOVA. Warren requested a court-ordered buyout of her interests in ACOVA or, in the alternative, a court-ordered sale of the company.

The road to trial was long, lasting nearly four years. In 2019—during the litigation—Kenneth informed ACOVA's shareholders and board members that he would be selling all his shares in the company. After this announcement, Warren also expressed interest in selling her shares. When negotiations between Warren and ACOVA fell through, however, ACOVA did not redeem the shares held in Warren's trusts. ACOVA did redeem shares held by the trusts owned by Kenneth, Grace, and Mark, for over $178 million.

In June 2020, Warren amended her complaint to include the additional allegation that the 2019 redemption of ACOVA stock was unfairly prejudicial and denied her reasonable expectations as a shareholder (the "redemption scheme issue"), thus further supporting her request for a court-ordered buyout of her interests in ACOVA under section 302A.751.

7

The district court considered Warren's claims during a 16-day court trial held in January and February 2022. Following the presentation of evidence during the winter, the district court heard the attorneys' closing arguments in June 2022. Throughout trial and during closing arguments, both parties referred to Warren's interests in ACOVA as "beneficial ownership" and to Warren herself as both a "shareholder" and a "beneficial shareholder" or "beneficial owner" in ACOVA.

### Respondents allege that Warren lacks standing to bring her claims

On December 19, 2022, six months after closing arguments, and while the district court had the case under advisement, the court of appeals issued a nonprecedential decision in *Demskie v. U.S. Bank National Ass'n*, No. A22-0777, 2022 WL 17751473 (Minn. App. Dec. 19, 2022). There, the court of appeals affirmed the district court's dismissal of the plaintiffs' claims on the pleadings for failure to state claims upon which relief could be granted. *Demskie*, 2022 WL 17751473, at *2–4. The court of appeals held that a beneficial owner cannot commence a shareholder action seeking relief under section 302A.751 because, under the statute, only a shareholder may initiate such an action.[3] 2022 WL 17751473, at *3–4.

Three days after the release of the court of appeals' decision in *Demskie*, the Evenstad respondents filed a letter in the district court arguing that Warren, like the plaintiffs in *Demskie*, lacked "standing" to bring her section 302A.751 claims because

---

[3]     We granted review but did not reach the merits of this aspect of the court of appeals' opinion, instead affirming the court of appeals by an equally divided court. *Demskie v. U.S. Bank Nat'l Ass'n*, 7 N.W.3d 382, 388–90 (Minn. 2024).

8

she is a beneficial owner of shares in ACOVA through the five trusts, and not a shareholder. The letter further asserted that, because they were raising an issue of standing, their argument could be raised at any time and was not waived. Warren filed a responsive letter to the district court. Her response observed that the court of appeals' decision in *Demskie* "addressed whether the plaintiffs had a cause of action without mentioning standing, much less questioning its jurisdiction to decide the case on the merits." Warren referred to the Evenstad respondents' argument as a "statutory standing" issue—the first time that term was referenced in the district court—and argued that, because "statutory standing" is distinct from jurisdictional standing, the Evenstad respondents had waived their argument by failing to raise it before or at trial.

About three months after the parties filed these letters, in March 2023, the district court issued initial findings of fact, conclusions of law, and an order for judgment. Regarding Warren's section 302A.751 claims, the district court denied Warren's request for a court-ordered buyout but did find unfairly prejudicial behavior related to the redemption scheme issue. As a result, the district court ordered ACOVA to make redemption payments to Warren's trusts, to continue winding down its operations, and to make final distributions to shareholders. Regarding the *Demskie* argument raised by the Evenstad respondents, the district court stated that it need not address the standing issue because it was not ordering a buyout.

After the district court's March 2023 order, the parties submitted post-trial motions requesting that the district court amend its order. Relevant here, the Evenstad respondents and ACOVA requested that the district court amend the order to conclude that Warren

9

lacks "standing" under section 302A.751 and the court of appeals' *Demskie* decision. Respondents maintained that this was a non-waivable issue of standing.

In January 2024, the district court issued amended findings of fact, conclusions of law, and an order for judgment. The district court denied respondents' motion to find that Warren lacked standing under section 302A.751.

### The court of appeals' decision

Warren and Rubin both appealed the district court's January 2024 order to the court of appeals. ACOVA, Mark, and Grace[4] cross-appealed, arguing that Warren lacked standing to pursue her section 302A.751 claims and that the district court thus lacked jurisdiction to award the relief it ordered. In a precedential opinion, the court of appeals affirmed in part, reversed in part, and remanded. *Warren v. ACOVA, Inc.*, 21 N.W.3d 218 (Minn. App. 2025). As relevant here, the court of appeals determined that Warren was a beneficial owner of shares in ACOVA, not a shareholder, and thus she did not have standing to bring an action under section 302A.751. *Warren*, 21 N.W.3d at 250–53. The court of appeals also concluded that, because this issue concerned standing, and standing is a jurisdictional issue that cannot be waived, respondents did not waive this argument. *Id.* at 250 n.21. Accordingly, the court of appeals reversed the district court's award of relief under section 302A.751. *Warren*, 21 N.W.3d at 226. But the court of appeals

---

4       Grace, as the personal representative of Kenneth's estate, was substituted as a party following Kenneth's death in 2020.

10

remanded the case to the district court with instructions to determine whether Warren had any alternative bases for standing. *Id.* at 254.

### *The parties' petitions for further review*

Following the court of appeals' decision, Warren and Rubin petitioned this court for further review, and the Evenstad respondents requested conditional cross-review. We granted review of two issues raised in Warren's petition for review—whether a "shareholder" under section 302A.751 includes "a beneficial owner of shares in a Minnesota closely held corporation" and whether "statutory standing [is] waivable"—and denied review of all other issues.

## ANALYSIS

The issues before us stem from an argument that the Evenstad respondents raised in the district court six months after the parties presented closing arguments in the court trial and before the district court issued its findings of fact, conclusions of law, and order. The Evenstad respondents argued to the district court—based on the court of appeals' newly issued decision in *Demskie v. U.S. Bank National Ass'n*, No. A22-0777, 2022 WL 17751473 (Minn. App. Dec. 19, 2022)—that Warren lacked standing to bring her shareholder claims under Minnesota Statutes section 302A.751 because she was a beneficial owner of ACOVA shares and not a shareholder. The Evenstad respondents acknowledged that their argument came late in the district court proceedings. But they argued to the district court that, because a standing challenge impacts whether a court has jurisdiction to hear a case and can be brought at any time, they did not waive their

11

challenge to Warren's standing by belatedly raising it. The district court did not squarely address the standing issue.

Before the court of appeals, the Evenstad respondents, joined by ACOVA, again challenged Warren's standing to bring her shareholder claims under section 302A.751. The court of appeals agreed with respondents, determining that Warren did not have standing to bring a shareholder action under section 302A.751 because she was not a shareholder but a beneficial owner of shares. *Warren*, 21 N.W.3d at 253. The court of appeals further determined that respondents did not waive their standing argument by belatedly bringing it because the issue of standing, which implicates a court's jurisdiction, cannot be waived. *Id.* at 250 n.21.

We consider both of these holdings: whether Warren lacked standing to pursue her claims under section 302A.751 and whether respondents waived or forfeited[5] their challenge to Warren's ability to sue under section 302A.751.

In Part I of this opinion, we address whether respondents' challenge to Warren's ability to bring a shareholder action under section 302A.751 concerns Warren's *standing*, as the court of appeals determined (and respondents argue), or the *legal sufficiency* of Warren's claims (as Warren argues). The answer to this question, in turn, determines

---

[5]    Some of our case law, including cases cited in this decision, use the term "waiver" to mean "forfeiture." As we have clarified more recently, however, these are distinct concepts. Waiver is "the intentional relinquishment of a known right." *Leiendecker v. Asian Women United of Minn.*, 895 N.W.2d 623, 631 (Minn. 2017) (quoting *Carlson v. Doran*, 90 N.W.2d 323, 328 (Minn. 1958) (internal quotation marks omitted)). Forfeiture, on the other hand, "refers to the failure to timely assert a right." *Id.* at 631 n.3. Although the parties use the term "waiver," we determine that forfeiture is the correct term in the context of this case.

whether respondents' challenge to Warren's ability to bring claims under section 302A.751 could be waived or forfeited by bringing it late in the litigation. We conclude that respondents' challenge does not concern standing, but only the legal sufficiency of Warren's claims.

In Part II, we address whether the legal sufficiency of Warren's claims is an issue that is properly before us. We conclude that the question of whether Warren, as a beneficial owner of shares, stated legally sufficient claims under section 302A.751 is not properly before us because respondents forfeited the issue. Thus, we do not reach the merits of this argument.

I.

We begin with the question of whether Warren lacked standing to bring claims under section 302A.751. We review issues of standing de novo. *Stone v. Invitation Homes, Inc.*, 4 N.W.3d 489, 493 (Minn. 2024).

Warren contends that whether she is a shareholder does not affect her standing to sue respondents. She asserts that she has injury-in-fact standing. And Warren argues that whether she is a shareholder does not implicate her standing to pursue claims under section 302A.751. Rather, she maintains, whether she is a shareholder only impacts the legal sufficiency of her claims. Warren asserts that respondents have waived their challenge to the legal sufficiency of her claims by failing to timely raise their argument.

Respondents contend that Warren had no "statutory standing" to bring her section 302A.751 claims because she was not a shareholder as defined by chapter 302A and was instead a beneficial owner of shares. Based on Warren's alleged lack of standing,

respondents argue that the district court had no jurisdiction to consider her section 302A.751 claims. Respondents further contend that the court of appeals correctly held that because "statutory standing" implicates a court's jurisdiction, it is a non-waivable legal issue that can be raised at any time. *See Warren*, 21 N.W.3d at 250 n.21. Thus, according to respondents, they did not waive their challenge to Warren's status as a shareholder by failing to bring it earlier in the district court proceedings.

To resolve this issue, we briefly discuss shareholder actions under section 302A.751. Then, we consider Minnesota's standing doctrine. Finally, we address whether respondents' objection to Warren's "statutory standing" to pursue her claims under section 302A.751 raised a justiciability issue, which is not subject to waiver or forfeiture, or an issue regarding the legal sufficiency of her claims, which may be waived or forfeited.

### A.

The Minnesota Business Corporation Act (the Act), codified in chapter 302A of Minnesota Statutes, governs how corporations are formed, managed, and dissolved in Minnesota. Minn. Stat. ch. 302A. Warren brought her shareholder action under section 302A.751, a provision of the Act that outlines when and how courts may grant equitable relief in corporate disputes. As relevant here, section 302A.751, subdivision 1(b)(3), states that a court may grant equitable relief "*[i]n an action by a shareholder* when it is established that … the directors or those in control of the corporation have acted in a manner unfairly prejudicial toward one or more shareholders." Minn. Stat. § 302A.751, subd. 1(b)(3) (emphasis added). In such a

shareholder action, the court may grant "any equitable relief it deems just and reasonable in the circumstances" and may also "dissolve a corporation and liquidate its assets and business." *Id.*, subd. 1. In addition, in an action under section 302A.751, subdivision 1(b), and "upon motion of a corporation or a shareholder or beneficial owner of shares of the corporation," a court may order the sale, or buyout, of the shares in the company held by the plaintiff or the defendants. *Id.*, subd. 2.

The Act states that defined terms have the meaning given "unless the language or context clearly indicates that a different meaning is intended." Minn. Stat. § 302A.011, subd. 1. It defines the term "shareholder" as "a person registered on the books or records of a corporation or its transfer agent or registrar as the owner of whole or fractional shares of the corporation." *Id.*, subd. 29. The Act also defines "beneficial owner," which includes any person who "directly or indirectly through any written or oral agreement, arrangement, relationship, understanding, or otherwise, has or shares the power to vote, or direct the voting of, the shares or securities or has or shares the power to dispose of, or direct the disposition of, the shares or securities." *Id.*, subd. 41(a).

In *Demskie*, the court of appeals considered whether a beneficial owner of shares in a corporation could bring a shareholder action under section 302A.751. *Demskie*, 2022 WL 17751473, at *3–4. The Demskies, who were beneficial owners of shares in RTI, brought a shareholder action against U.S. Bank, seeking a buyout of their interests in RTI under section 302A.751. 2022 WL 17751473, at *2. In the district court, U.S. Bank moved for judgment on the pleadings for failure to state claims upon which relief can be granted. *Id.* The district court granted the motion, determining in part that the Demskies

15

were not RTI shareholders because they did not satisfy the definition of a "shareholder" under the Act. *Id.* The Demskies appealed to the court of appeals. There, they argued that the district court erred in dismissing their complaint for failure to state legally sufficient claims. *Id.* The court of appeals affirmed the dismissal. It determined that because the Demskies were not shareholders, their complaint failed to state a claim upon which relief can be granted. *Id.* at *5. And the court of appeals determined that, because the Demskies were not shareholders, they were not entitled to seek a buyout under the Act. *Id.* at *4–5. The court of appeals' *Demskie* decision did not address standing.[6]

Relying on its decision in *Demskie*, the court of appeals concluded that Warren lacked standing to bring her claims under section 302A.751 and that respondents did not waive their challenge to her standing by raising it late in the proceedings because the issue of standing is not waivable. *Warren*, 21 N.W.3d at 253–54, 250 n.21. Before this court, respondents maintain that the court of appeals' analysis is correct.

But Warren argues that the court of appeals erred in characterizing respondents' *Demskie* argument as one implicating standing. She further contends that, because the argument does not concern the unwaivable issue of standing, respondents waived the argument by raising it late in the proceedings. Accordingly, Warren asks us not to reach the question of whether she had the ability to bring a shareholder action under section 302A.751.

---

[6]     We granted review in *Demskie*. *Demskie v. U.S. Bank Nat'l Ass'n*, 7 N.W.3d 382, 386 (Minn. 2024). On the issue of whether a beneficial owner can bring a shareholder action, we affirmed the court of appeals' decision by an equally-divided court. *Id.* at 389–90. Our discussion of this issue did not mention the parties' standing to sue.

To determine whether respondents timely raised their challenge to Warren's ability to bring a shareholder action under section 302A.751, we initially consider whether the challenge concerns Warren's standing.

B.

We begin by examining our law in Minnesota concerning standing. Standing is an essential element of a court's jurisdiction that cannot be waived or forfeited by the parties. *See Glaze v. State*, 909 N.W.2d 322, 325 (Minn. 2018); *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 850 (Minn. 1985) (stating that "an objection to want of 'standing' goes to the existence of a cause of action, is jurisdictional, and may be raised at any time"). Under the standing doctrine, a party seeking relief from a court must have a sufficient stake in a justiciable controversy. *Lorix v. Crompton Corp.*, 736 N.W.2d 619, 624 (Minn. 2007) (citing *Sierra Club v. Morton*, 405 U.S. 727, 731–32 (1972)). Unlike the federal standing doctrine, which has a constitutional element, *Lorix*, 736 N.W.2d at 624, 631,[7] standing in Minnesota state courts is a prudential doctrine that ensures the factual and legal issues before the courts will be vigorously and adequately

---

[7]     Our court is not bound by the standing constraints of Article III of the United States Constitution. *Snyder's Drug Stores, Inc. v. Minn. State Bd. of Pharmacy*, 221 N.W.2d 162, 165 (Minn. 1974); *see N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 8 n.2 (1988) ("[T]he special limitations that Article III of the Constitution imposes on the jurisdiction of the federal courts are not binding on the state courts."); *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989) ("[S]tate courts are not bound to adhere to federal standing requirements …."); 59 Am. Jur. 2d *Parties* § 31 (2025) ("Unlike federal courts, state courts are not bound by constitutional strictures on standing. With state courts, standing is a self-imposed rule of restraint." (footnotes omitted)). Article VI of the Minnesota Constitution does not have the same limiting language as Article III of the United States Constitution.

presented, *see State ex. rel. Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 495 (Minn. 1996) ("The legal concept of standing developed in recognition of the common-place notion that those most directly injured would be most likely to litigate effectively any claims arising out of that injury.").

We have recognized that parties may acquire standing in two ways. First, a party who has suffered an "injury in fact" has standing to seek redress for that injury. *Minn. Voters All. v. Hunt*, 10 N.W.3d 163, 167 (Minn. 2024). And second, a party may be the beneficiary of a legislative grant of standing. *Id.*

To have injury-in-fact standing, a party must have suffered "a concrete and particularized invasion of a legally protected interest." *Lorix*, 736 N.W.2d at 624. A "concrete" injury is one that is real and not abstract; "a merely possible or hypothetical injury is inadequate." *Minn. Sands, LLC v. County of Winona*, 940 N.W.2d 183, 192 (Minn. 2020) (citation omitted) (internal quotation marks omitted). The injury must also be "particularized." *Lorix*, 736 N.W.2d at 624. We have stated, for instance, that a party challenging an agency action must have "sustained injury to some interest which differs from injury to the interests of other citizens generally." *In re Sandy Pappas Senate Comm.*, 488 N.W.2d 795, 797 (Minn. 1992); *see also Webb Golden Valley, LLC v. State*, 865 N.W.2d 689, 693 (Minn. 2015) ("The injury must be more than mere dissatisfaction with the State's interpretation of a statute.").

A broad range of harms may qualify as an injury in fact. *See Sierra Club*, 405 U.S. at 734 (stating that "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society" and declining to question

that this type of harm may amount to an injury in fact). Common examples of an injury in fact include the violation of a constitutional right, a breach of contract, or an economic loss. *See, e.g.*, *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 337–38 (Minn. 2011) (observing that parties had standing to sue by alleging a violation of their rights under the Minnesota Constitution); *Thompson v. St. Anthony Leased Hous. Assocs. II, LP*, 979 N.W.2d 1, 7 (Minn. 2022) (stating that a claimed economic loss, stemming from a breach of contract, "suffices as an injury-in-fact").

Litigants who do not meet the injury-in-fact standing requirement may nonetheless obtain judicial intervention through a legislative enactment that specifically authorizes a particular kind of party to pursue a particular kind of claim. For example, the Minnesota False Claims Act grants certain plaintiffs a private right of action to sue and collect funds owed to the State. Minn. Stat. § 15C.05; *see Phone Recovery Servs., LLC v. Qwest Corp.*, 919 N.W.2d 315, 319 (Minn. 2018). Likewise, the Minnesota Environmental Rights Act gives "[a]ny person residing within the state" the right to sue for declaratory or equitable relief, "for the protection of the air, water, land, or other natural resources located within the state." Minn. Stat. § 116B.03, subd. 1; *see State ex rel. Schaller v. County of Blue Earth*, 563 N.W.2d 260, 264 (Minn. 1997). This court has only referred to this second type of standing as "statutory standing" in passing. *See, e.g.*, *Krueger v. Zeman Constr. Co.*, 781 N.W.2d 858, 862 (Minn. 2010).

Standing implicates the justiciability of an action—that is, whether it is appropriate for a court to hear a claim. *See McCaughtry*, 808 N.W.2d at 336, 338 (referencing standing and ripeness as doctrines underlying the justiciability of a case).

19

Standing is also an essential element of a court's jurisdiction—whether a court has the power to hear a claim. *Glaze*, 909 N.W.2d at 325. Thus, standing cannot be waived or forfeited by the parties and can be raised at any time during the litigation. *Id.*

C.

With this background in mind, we now consider whether respondents' challenge to Warren's ability to bring claims under section 302A.751 implicated her standing and the court's jurisdiction over the claims.

Warren argues that she *does have* standing to pursue her claims under section 302A.751—injury-in-fact standing. Thus, she contends, whether she is a shareholder under chapter 302A does not implicate her standing or the justiciability of her claims. She argues that respondents challenge the legal sufficiency of her claims, which is more akin to an argument that she failed to state a legally viable claim under Minnesota Rule of Civil Procedure 12.02(e).[8] Warren points out that such challenges can be waived or forfeited if not timely brought. *See* Minn. R. Civ. P. 12.08(b) (stating that the defense of failure to state a claim may be made in any pleading, by motion for judgment on the pleadings, or at the trial on the merits).

Respondents argue that the court of appeals properly characterized their challenge to Warren's status as a challenge to her standing to sue under section 302A.751. *Warren*, 21 N.W.3d at 250. They further contend that this court has never treated "statutory

---

[8] Rule 12.02 lists defenses that may be asserted by motion or by responsive pleading. One of these defenses is the failure to state a claim upon which relief can be granted. Minn. R. Civ. P. 12.02(e).

standing" as "jurisdictionally distinct" from injury-in-fact standing. Thus, respondents argue, the court of appeals also correctly concluded that because "statutory standing" implicates a court's jurisdiction, their challenge to Warren's standing to sue under section 302A.751 could be brought at any time—that it is a non-waivable challenge. *See Garcia-Mendoza v. 2003 Chevy Tahoe*, 852 N.W.2d 659, 663 (Minn. 2014) ("Standing is a jurisdictional issue that may be raised at any time.").

Warren's argument is persuasive. We agree that her standing does not hinge upon her status as a shareholder under the Act.[9] Warren had injury-in-fact standing to sue because she alleged a particularized invasion of a legally protected interest: economic loss in trusts of which she was a beneficiary. *See United States v. O'Shaughnessy*, 517 N.W.2d 574, 577 (Minn. 1994) (stating that a trust beneficiary has an "equitable interest" in the subject matter of the trust); *Thompson*, 979 N.W.2d at 7 (recognizing economic loss as an injury in fact). Warren's second amended complaint alleges that respondents engaged in unfairly prejudicial conduct and violated her reasonable expectations as a beneficial owner of USL and ACOVA shares by, among other things, using the redemption scheme to reduce or eliminate her distributions. The district court found that respondents, in connection with the redemption scheme issue, "acted in a

---

[9]    In a footnote, the court of appeals stated that Warren did not allege she had injury-in-fact standing. *Warren*, 21 N.W.3d at 250 n.21. But respondents did not challenge Warren's injury-in-fact standing at the district court or at the court of appeals. And we have never required parties to affirmatively assert, in pleadings or at subsequent stages of litigation, the source of their standing to sue. At every stage of litigation, Warren alleged that she had suffered harm as a result of respondents' actions. To the extent that Warren was required to preserve the injury-in-fact argument, this was sufficient.

21

manner that was unfairly prejudicial" to Warren and ordered ACOVA to pay more than $40 million to Warren's trusts as compensation. Warren thus had injury-in-fact standing to bring her claims in the district court.

Because Warren has standing independent from any statutory grant, whether Warren is a shareholder under section 302A.751 does not implicate her standing to sue and the justiciability of her claims. Respondents' challenge to Warren's "statutory standing" is a challenge to whether Warren has a legally sufficient claim. Warren sought relief under section 302A.751, subdivision 1(b)(3), which states that a court may grant relief "[i]n an action *by a shareholder*" when "the directors or those in control of the corporation have acted in a manner unfairly prejudicial toward *one or more shareholders* in their *capacities as shareholders* or directors of a corporation that is not a publicly held corporation, or as officers or employees of a closely held corporation." Minn. Stat. § 302A.751 subd. 1(b)(3) (emphasis added). Thus, Warren's status as a "shareholder" under the statute is an element of the claim that must be proven to succeed on her cause of action, just like every other required element—such as respondents' status as a closely held or non-public corporation and that "those in control of the corporation" have acted in an unfairly prejudicial manner toward its "shareholders." *Id.* This presents a "straightforward question of statutory interpretation": whether the plaintiff "falls within the class of plaintiffs whom [the Legislature] has authorized to sue." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

Our analysis aligns with how federal courts have approached "statutory standing." In *Lexmark International, Inc.*, for example, the Supreme Court considered whether a

22

plaintiff had "statutory standing" to maintain a false advertising action under the Lanham Act. 572 U.S. at 125. The Supreme Court observed that the term "statutory standing" is misleading because "the absence of a valid … cause of action does not implicate subject-matter jurisdiction, *i.e.*, the court's statutory or constitutional *power* to adjudicate the case." *Id.* at 128 n.4 (citation omitted) (internal quotation marks omitted). The parties in *Lexmark International, Inc.*, did not dispute that the plaintiff had injury-in-fact standing. *Id.* at 125. Thus, according to the Supreme Court, whether the plaintiff fell within a class of plaintiffs whom Congress had authorized to sue presented a question of whether the plaintiff had a cause of action under the statute. *Id.* at 128; *see also CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (noting that "statutory standing" "is perhaps best understood as not even standing at all" because it concerns only "whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action"); *Roberts v. Hamer*, 655 F.3d 578, 580–81 (6th Cir. 2011) ("Where a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction.").

Unlike federal courts, we have never expressly distinguished "statutory standing" from jurisdictional standing. However, under our case law and rules of procedure, it is evident that the existence of a cause of action alone does not implicate a court's jurisdiction in the way that standing does. As we stated in *State Board of Medical Examiners v. Olson*, "[i]t is well settled that the failure to state a proper cause of action

23

calls for a judgment on the merits and not for a dismissal for want of jurisdiction."

206 N.W.2d 12, 18 (Minn. 1973) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

And on at least one occasion, we have mirrored the federal approach by treating a "statutory standing" question as an issue concerning the legal sufficiency of a claim. *Krueger*, 781 N.W.2d at 862; *see also Marine Credit Union v. Detlefson-Delano*, 830 N.W.2d 859, 864 n.3 (Minn. 2013) (rejecting the argument that a party lacked standing under a statute because the plaintiff had injury-in-fact standing). In *Krueger*, we considered a provision of the Minnesota Human Rights Act that provided "aggrieved" parties the ability to sue under that act. 781 N.W.2d at 863. We noted that we were "interpreting [the] statute to determine if it creates *a cause of action*." *Id.* (emphasis added). Concluding that the plaintiff was not an "aggrieved" party who was granted a "cause of action for business discrimination" under the Minnesota Human Rights Act, we affirmed the district court's dismissal of the claim under Minnesota Rule of Civil Procedure 12.02(e) for failure to state a claim upon which relief can be granted—not based on the plaintiff's purported lack of standing. 781 N.W.2d at 860–61, 866.

In *Krueger*, we also briefly discussed the relationship between injury-in-fact standing and a cause of action. We noted that in the context of civil rights litigation, "the act of discrimination itself constitutes sufficient injury for the law to provide a remedy, in *the absence of statutory language requiring more*." 781 N.W.2d at 862 (citation omitted) (internal quotation marks omitted). And we observed that when the statute does require more, "there may be an injury-in-fact, but no legal claim recognized by the statute." *Id.* In other words, the plaintiff in *Krueger* could not assert a claim because, although she had

injury-in-fact standing, she lacked a cause of action. Similarly here, Warren has injury-in-fact standing, but section 302A.751 requires more—she must also be a "shareholder" to take advantage of the legislatively-created cause of action.

At the same time, and perhaps imprecisely, we indicated that the question in *Krueger* was also an inquiry into the party's "standing," at least in some sense. 781 N.W.2d at 862 ("[A]n act of discrimination alone will not satisfy the statutory standing requirement if the language of the MHRA requires more."). We acknowledge that the terminology used in some of our case law has blurred the distinction between standing that impacts a court's jurisdiction and the separate question of whether a particular plaintiff has established a cause of action under a statute. *See, e.g.*, *State ex rel. McClure*, 370 N.W.2d at 850 (stating that "standing"—without distinguishing between "statutory standing" and injury-in-fact standing—"goes to the existence of a cause of action, is jurisdictional, and may be raised at any time"); *In re Est. of Jotham*, 722 N.W.2d 447, 451 (Minn. 2006) (reaching the question of whether a party had "standing" under the Parentage Act even though the issue was not raised below, because "standing is jurisdictional and thus may be raised at any time").[10] But because the question is not before us, we need not define the precise contours of these two concepts.

---

[10]    In *Jotham*, we also held that the party could not bring an action under the Parentage Act because she did not satisfy the statute's timeliness requirements. 722 N.W.2d at 457. Thus, our statements regarding standing in *Jotham* may be judicial dicta. *See State v. Rainer*, 103 N.W.2d 389, 395–96 (Minn. 1960) (stating that judicial dictum is "an expression of opinion on a question directly involved and argued by counsel though not entirely necessary to the decision" and "should not be lightly disregarded").

25

Nor does our decision here impact the well-established principle that plaintiffs may acquire standing through a legislative grant.

We simply hold that, because Warren has injury-in-fact standing, the question of whether she has "a sufficient stake in a justiciable controversy to seek relief from a court" is answered. *Minn. Voters All.*, 10 N.W.3d at 167. And because that question is answered, respondents' challenge to Warren's status as a shareholder does not affect the court's jurisdiction to hear her case, which would be a non-waivable challenge. *See Glaze*, 909 N.W.2d at 325; Minn. R. Civ. P. 12.08(c). Instead, respondents' challenge to Warren's status as a shareholder is a challenge to the legal sufficiency of her claims under section 302A.751. Such a challenge can be waived or forfeited. *See* Minn. R. Civ. P. 12.08(b).

## II.

We next consider whether respondents waived or forfeited their challenge to Warren's status as a shareholder by raising it late in the proceedings before the district court.

Generally, the failure to timely assert a defense forfeits that defense. *Compare* Minn. R. Civ. P. 12.08(a)–(b) (establishing that certain defenses must be raised at certain specific times), *with* Minn. R. Civ. P. 12.08(c) (stating that a court must dismiss the action "whenever it appears" that the court lacks jurisdiction). The doctrine of forfeiture does not implicate a court's power to hear a claim; rather, its purpose is to promote "the orderly progress of litigation" by encouraging parties to raise the appropriate matters at their appropriate times. *See McCullough & Sons, Inc. v. City of Vadnais Heights*,

26

883 N.W.2d 580, 589 (Minn. 2016). As a non-jurisdictional defense, a challenge to the legal sufficiency of a party's claims is thus subject to waiver or forfeiture. *See Carlton v. State*, 816 N.W.2d 590, 606 (Minn. 2012) (holding that, because time limitations in a statute are not a "jurisdictional bar," a party's failure to assert a timeliness defense "waive[s]" it); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 504 (2006) (categorizing a statutory requirement relating to the "substantive adequacy" of a party's claim as non-jurisdictional, and concluding it could not be raised as a defense two weeks after the district court entered judgment on the jury verdict).

Warren argues that respondents waived their challenge by bringing it to the district court years into the litigation, after a 16-day court trial, six months after closing arguments, and while the district court had the case under advisement. But respondents contend that, even if Warren's lack of standing is a waivable issue, they did not waive it. Respondent ACOVA notes that it raised Warren's lack of standing as an affirmative defense in its answer.[11] And respondents point out that they raised and fully argued Warren's lack of standing in the district court several days after the court of appeals issued its decision in *Demskie*—the decision that provided the basis for their challenge. We conclude that respondents forfeited their challenge to the legal sufficiency of Warren's section 302A.751 claims.

Initially, we reject ACOVA's argument that the boilerplate assertion in its answer that Warren lacked "standing" was sufficient, in and of itself, to preserve the theory that

---

[11]    The Evenstad respondents did not assert in their answer that Warren lacked standing.

Warren is not a shareholder for the purpose of section 302A.751. We have already determined that the "not a shareholder" argument is not a standing issue. And ACOVA's single assertion in its answer that Warren lacked "standing"—without more—was inadequate to preserve the "not a shareholder" argument that it raised several years later based on the court of appeals' *Demskie* decision. *See Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) (noting that the assertion of a defense in an answer "[does] not preserve the defense in perpetuity" and the defense may still be lost "by failure to assert it seasonably" (citations omitted) (internal quotation marks omitted)).

We also determine that respondents forfeited their "not a shareholder" argument by raising it as they did in this case. Rule 12.08(b) of the Minnesota Rules of Civil Procedure allows a party to raise the defense of failure to state a claim upon which relief can be granted, at the latest, "at the trial on the merits." But Rule 12.08 " 'sets only the outer limits of waiver.' " *Patterson v. Wu Fam. Corp.*, 608 N.W.2d 863, 868 (Minn. 2000) (quoting *Yeldell*, 913 F.2d at 539). And we have recognized that Rule 12.08 does not immunize a defense from forfeiture through conduct. 608 N.W.2d at 868–69.

In *Patterson*, we concluded that the defendant forfeited the defense of insufficient service of process through his litigation conduct. *Id.* at 869. Under Rule 12.08(a), the defense of insufficient service of process is "waived" if omitted from an answer or if omitted from a motion to dismiss under Rule 12.[12] Minn. R. Civ. P. 12.08(a). The defendant in *Patterson* asserted insufficient service of process in his answer but never

---

[12]     Rule 12.08(a) uses the term "waived."

28

moved to dismiss on that ground. *Patterson*, 608 N.W.2d at 865–66. Instead, he moved for and obtained summary judgment on the merits on several counts. *Id.* Almost eight months after asserting the defense of insufficient service of process in his answer—and after the statute of limitations had expired—the defendant moved to dismiss for insufficient service of process. *Id.* at 866. The district court granted the motion, finding no waiver under Rule 12.08(a), and the court of appeals affirmed. 608 N.W.2d at 866. Reversing, we observed that the language of Rule 12.08 does not preclude waiver by implication from affirmative conduct. 608 N.W.2d at 868. And we concluded that the defendant's conduct waived the defense of insufficient service of process. *Id.* at 869. We noted that "[t]he rules of procedure should be construed to discourage unnecessary litigation" and that defendants "must not only comply with the letter of [Rule 12.08], but also with the spirit of the rule, which is to expedite and simplify proceedings in the … courts." *Id.* at 868 (citation omitted) (internal quotation marks omitted).

While *Patterson* involved the waiver of a defense under Rule 12.08(a), the applicable rule here—Rule 12.08(b)—does not address "waiver" of a defense of failure to state a claim upon which relief can be granted. Instead, it identifies when, during proceedings, such a defense may be asserted, including "at the trial on the merits." However, as we acknowledged in *Patterson*, a defendant's conduct may result in forfeiture of a defense that otherwise complies with Rule 12.08.

We need not decide whether respondents' argument—made over four years into the litigation, six months after the court trial, and while the case was under advisement— occurred "at the trial on the merits." Even assuming without deciding that respondents

29

asserted their challenge to the legal sufficiency of Warren's claims "at the trial on the merits," we conclude that they forfeited any argument that Warren's complaint failed to state a claim upon which relief can be granted. We reach this conclusion based on the unique confluence of circumstances in this case.

First, respondents' assertion that Warren is not a shareholder is inconsistent with their conduct throughout the four-plus years of litigation in this case. Respondent ACOVA's answer acknowledged Warren's status as a beneficial owner and never suggested that this status was legally insufficient to trigger section 302A.751. *See W.H. Barber Co. v. McNamara-Vivant Contracting Co.*, 293 N.W.2d 351, 358 (Minn. 1979) (stating that defendants' argument "contradict[ing] defendants' pleadings and position at trial" was not properly before the court). Further, respondent ACOVA's counterclaim affirmatively alleged that Warren was a "shareholder" and invoked the buy-sell agreement's mandatory redemption provisions premised on that status. *Cf. Miss. Valley Dev. Corp. v. Colonial Enters., Inc.*, 217 N.W.2d 760, 764 (Minn. 1974) (stating that a party that "tak[es] affirmative steps in the action" and "invoke[s] the power of the court on [its] own behalf" waives its inconsistent defense that the court lacked jurisdiction). The Evenstad respondents, like Warren, held their ACOVA shares through trusts. Yet, throughout the litigation, they treated themselves as shareholders for the purpose of section 302A.751 and the buy-sell agreement.

Second, although respondents could have raised their "not a shareholder" argument earlier in the proceedings—and the record indicates that respondents were

30

likely aware of the argument even before the court of appeals' *Demskie* decision[13]—they did not. *See Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1160–61 (3d. Cir. 1989) (stating that it "would be grossly unfair to allow a plaintiff to go to the expense of trying a case only to be met by a new defense after trial"). The case was litigated for over four years, through extensive discovery, motion practice, a 16-day bench trial, 413 exhibits, 4,325 pages of transcript, and nearly 1,000 pages of proposed findings of fact and conclusions of law. Respondents conducted and defended depositions. They moved for summary judgment. And at no point during this time did respondents argue that Warren was categorically barred from relief under section 302A.751 because she was a beneficial owner rather than a shareholder.

Third, although the court of appeals' *Demskie* decision concerned whether the plaintiffs' complaint stated valid claims for relief, *Demskie*, 2022 WL 17751473, at *2, *4–5, respondents insisted in the district court that *Demskie* was a jurisdictional standing case that required dismissal of Warren's claims on standing grounds. Warren flagged this problem, arguing to the district court that *Demskie* "addressed whether the plaintiffs had a cause of action without mentioning standing, much less questioning its jurisdiction to decide the case on the merits." Nonetheless, respondents pressed their standing theory, challenging only Warren's standing and raising no other theory. *See Thiele v. Stich*,

---

[13]     When respondents raised the "not a shareholder" argument to the district court following the *Demskie* decision, the district court asked whether counsel for respondents were also involved in the *Demskie* matter. Respondents' counsel acknowledged that counsel for ACOVA also represented the plaintiffs in the *Demskie* case.

425 N.W.2d 580, 582 (Minn. 1988) (stating that a party may not obtain appellate review "by raising the same general issue litigated below but under a different theory").

Based on the combination of these circumstances, we conclude that respondents, through their conduct, forfeited their argument that Warren, as a beneficial owner of shares, did not state a legally sufficient claim under section 302A.751. Because respondents forfeited that issue, we decide not to reach its merits.

We therefore reverse the decision of the court of appeals. Because the court of appeals did not address several issues raised in the appeal after determining that Warren lacked standing, *see Warren*, 21 N.W.3d at 254 n.27, we remand to that court to address any remaining issues.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and remand to the court of appeals for further proceedings consistent with this opinion.

Reversed and remanded.